UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**EMPORIA SMITH,**

                **Plaintiff,**

vs.                                              Case No.   8:04-cv-1699-T-MSS

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**
_____/

## ORDER

This cause comes on for consideration upon the filing of Plaintiff's Motion for Remand Under Sentence Six of 42 U.S.C. § 405(g) (Dkt. 21), Plaintiff's Memorandum in Support of Motion to Remand (Dkt. 22) and the Commissioner's Memorandum in Opposition (Dkt. 25 ).

**I. BACKGROUND**

A.    Procedural Background

On September 7, 1999, Plaintiff applied for disability and disability insurance benefits alleging an onset of disability on August 13, 1999, due to pain in the left leg, thigh and hip joint, diabetic complications, joint pain and frequent headaches. (T. at 16-17). Her claim was denied initially and on reconsideration, and a request for hearing was timely filed. (T. at 16). A hearing was held on March 5, 2001, and disability benefits were denied by the Administrative Law Judge ("ALJ") in a June 11, 2001, decision. (T. at 16). Plaintiff timely filed a request for Appeals Council review. (T. at 16). During the pendency of that appeal, on August 16, 2001, Plaintiff protectively filed a subsequent application for disability insurance benefits. (T. at 16). In a February 21, 2002, decision, Plaintiff was

found to be disabled as of June 15, 2001. (T. at 16). The Appeals Council granted the request for review, vacated the hearing decision, consolidated the two claims and remanded them to the ALJ. (T. at 16). A hearing was held on July 1, 2003. (T. at 16). Plaintiff claims that on August 4, 2003, she submitted new medical records from her treating physician, Dr. Abib Conteh ("Dr. Conteh"). On August 25, 2003, the ALJ rendered a decision that Plaintiff was not disabled at any time through the date of the decision. (T. at 28). Plaintiff submits that she again submitted copies of the records from Dr. Conteh upon request by the Appeals Council. (Dkt. 1 at ¶ 4). On May 24, 2004, the Appeals Council denied review of the August 25, 2003, ALJ decision and noted that no records from Dr. Conteh had been received to date, making that decision the final decision of the Commissioner. (T. at 6-8). On July 22, 2004, Plaintiff filed this action for review.

B.  Medical History and Findings Summary

Plaintiff's medical history is set forth in the ALJ's decision. By way of summary, the medical evidence indicates that Plaintiff suffers from diabetes mellitus with retinopathy and neuropathy and degenerative disc disease of the lumbar spine. (T. at 23).

After considering the evidence, including medical records, the ALJ found that the foregoing impairments are severe within the meaning of the Regulation, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (T. at 23). At step two of the sequential analysis, the ALJ found that Plaintiff's depression does not represent a severe mental impairment. (T. at 23). Next, the ALJ assessed Plaintiff's ability to work at the fourth and fifth stage of the sequential analysis.

The ALJ evaluated Plaintiff's residual functional capacity ("RFC") to determine if she could return to her past relevant work or other work existing in significant numbers in the

national economy. (T. at 16). The ALJ found that from August 13, 1999, through February 7, 2002, Plaintiff retained the RFC to lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently, sit, stand or walk for 6 hours out of an 8-hour day with the option to sit or stand at will and occasionally climb, balance, stoop, kneel, crouch and crawl. (T. at 28). Beginning February 8, 2002, Plaintiff retained the RFC to lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk about 3 to 4 hours out of an 8-hour workday, sit for 6 hours out of an 8-hour work day with the option to sit or stand at will, and occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. Plaintiff, however, was unable to climb ladders, ropes or scaffolds and had to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. (T. at 28). Significantly, the ALJ found no mental limitations that would limit in any way Plaintiff's capacity for gainful employment. The ALJ subsequently concluded that based on Plaintiff's RFC, Plaintiff is capable of performing her past relevant work as a community organization input worker as that job is customarily performed in the local and national economy. (T. at 28). As such, the ALJ concluded that she is not disabled under the Act.

## II. DISCUSSION

In this case, Plaintiff argues that she submitted new evidence in the form of medical records from her treating physician, Dr. Conteh, to the ALJ prior to the ALJ's decision regarding Plaintiff's disability status. Plaintiff contends that the ALJ never considered these records and the records were never entered into evidence. For the reasons that follow, the Court finds that the records are new and material and good cause exists to resubmit them to the ALJ for further consideration. Plaintiff has not requested that the matter be reversed and remanded under sentence four due to the ALJ's failure to consider all of the medical records in evidence. See 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1527(b), 416.927(b); Cook

3

v. Barnhart, 347 F. Supp. 2d 1125, 1132 (M.D. Ala. 2004)(finding that when an ALJ has failed to make reference to specific records in an opinion, the Court will conclude that they were not considered). Rather, Plaintiff argues that the case should be remanded pursuant to sentence six of 42 U.S.C. § 405(g).

The Court will remand a claim pursuant to sentence six only if the claimant demonstrates: (1) that there is new, non-cumulative evidence; (2) that the evidence is material such that "a reasonable possibility exists that the new evidence would change the administrative result"; and (3) that there is good cause for failure to submit the evidence. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998). Here, the Commissioner appears to concede that this is new evidence and that good cause has been established as she only argues that the evidence is not material. (Dkt. 25).

Plaintiff argues that Dr. Conteh's records are new in that they have never been considered and are relevant because they "buttress the assertions of the Plaintiff, with hypertension, diabetes, chronic pain syndrome, osteoarthritis, lumbar disc disease, chronic back pain, hip pain, leg pain, peripheral neuropathy, and abnormal endometrium." (Dkt. 22 at p.3). Plaintiff also argues that the records indicate "serious psychological issues" and should have triggered further development of Plaintiff's mental impairments such as the ordering of a consultative psychological or psychiatric examination. (Dkt. 22 at p.3).

The Commissioner agrees that the ALJ failed to consider the relevant records from Dr. Conteh. However, the Commissioner argues that the records in no way would, with reasonable probability, change the ALJ's decision. The Commissioner argues that the records would not change the ALJ's established sedentary physical RFC finding. The Commissioner further argues that, with respect to Plaintiff's mental capacity, Dr. Conteh is not a psychiatrist and "did not consider Plaintiff's self-diagnosed mental impairments as

4

warranting any treatment." (Dkt. 25 at p. 3). The Court notes that some of the records attached to Plaintiff's Memorandum as "new" records were, in fact, contained in the record. (See e.g. T. at 536-539, 547-48, 555, Dkt. 22 at Ex. A). However, the records on which the Court bases its decision were not contained in the record below.

The parties' respective contentions must be considered in the context of the standard of review that applies on this appeal. As noted, the ALJ not only declined to consider Plaintiff's mental state to be disabling, but also declined to find it severe at step 2 of the sequential analysis and therefore declined to find that it limited Plaintiff's capacity for work in any way. To sustain the Commissioner's position that the failure to consider this new evidence was harmless error would require the Court to sustain the ALJ's non-severity finding.

On this point, the law is clear. At step two of the five-step evaluation process, the ALJ is called upon to determine whether a plaintiff's impairments are severe. By definition, this inquiry is a "threshold" inquiry and allows only claims based on the most trivial impairments to be rejected. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. See Stratton v. Bowen, 827 F.2d 1447, 1450 (11th Cir. 1987). This severity test is a "reasonable administrative convenience designed to screen out groundless claims." Id. at 1452. Therefore, a plaintiff need show only that her impairment is not so slight and its effect not so minimal to survive step two. McDaniel, 800 F.2d at 1031.

Dr. Labortue's May 1997 records indicate that she prescribed Paxil for Plaintiff's depression. (T. at 22, 339). The ALJ noted that Plaintiff stopped taking the Paxil

5

approximately one month later because she was no longer depressed. (T. at 22, 338). In April 6, 1999, Dr. Labortue's records indicate that she prescribed 10 mg of Prozac for Plaintiff's depression. (T. at 327). By November 1999, Dr. Labortue had determined that Plaintiff's mental health was normal. (T. at 22, 318). Similarly, Dr. Mussenden, a clinical psychologist, evaluated Plaintiff on November 2, 1999. (T. at 316). Plaintiff reported that she had never been psychiatrically hospitalized and had never received outpatient mental health services. Dr. Mussenden found that Plaintiff "was in contact with reality; was mentally alert; was logical and rational; had an adequate recall for remote and recent events; and displayed adequate control over her thoughts, feelings and behavior. She did not suffer from hallucinations; had no problems with delusions; displayed no psychotic symptoms; did not appear to have any organic/neurological condition; did not appear to be suffering from anxiety; and did not appear to be suffering from depression." (T. at 316). Dr. Mussenden failed to find any mental disturbances or difficulties; but rather, he found Plaintiff to be "relatively well adjusted and controlled." (T. at 317).

Dr. Mussenden evaluated Plaintiff again on November 9, 2001. (T. at 499-502). Dr. Mussenden's findings were largely similar to his findings from November 1999, although he concluded Plaintiff had "good control over her thoughts, feelings and behavior." (T. at 500). Further, he noted that Plaintiff made "comments and statements suggesting she is suffering from a depressive disorder." (T. at 500). Dr. Mussenden further noted that Plaintiff felt useless, could not focus, did not want to do anything or be with others and slept frequently. (T. at 500). The doctor noted that the depression was directly related to her chronic pain condition but was not a "debilitating depressive disorder." (T. at 500). Dr. Mussenden diagnosed a mild depressive disorder and assigned a GAF of 70 due to "mild depression along with alcoholism and nicotine dependency." (T.

6

at 502).

In contrast to Drs. Labortue and Mussenden, Dr. Conteh's records indicate that on January 29, 2003, Plaintiff complained of being very anxious and requested Valium. (Dkt. 22 at Ex. A). Dr. Conteh diagnosed Plaintiff with anxiety syndrome and depression. The Commissioner's suggestion that Dr. Conteh "did not consider Plaintiff's self-diagnosed mental impairments as warranting any treatment" is inaccurate. (Dkt. 25 at p. 3). In fact, Dr. Conteh prescribed Lexapro to control Plaintiff's depression and anxiety. (Dkt. 22 at Ex. A). On February 26, 2003, April 9, 2003, and May 13, 2003, Dr. Conteh made no mention of anxiety or depression in Plaintiff. On July 14, 2003, however, Dr. Conteh noted that Plaintiff "is very depressed, has difficulty motivating herself in the mornings, malaise and fatigue." (Dkt. 22 at Ex. A). Despite the Commissioner's suggestion that "this office visit includes a diagnosis of depression but the treatment plan does not indicate that it was of sufficient significance to warrant any action," Dr. Conteh increased Plaintiff's Lexapro at this visit. (Dkt. 25 at p.2). Finally, while certain of Dr. Conteh's "Comments/Abnormalities" sheets indicate either that Plaintiff is within the normal limits for the psychiatric categories or do not reflect any opinion regarding Plaintiff's psychiatric capacity, at least one of Dr. Conteh's "Comments/Abnormalities" sheets indicates that Plaintiff has abnormal recent and remote memory. (Dkt. 22 at Ex. A).

Here, the ALJ found that Plaintiff's depression was not a severe mental impairment. (T. at 23). The ALJ noted that Plaintiff did not allege depression when she filed her applications for disability. (T. at 23). The ALJ stated that his decision was based on Dr. Mussenden's evaluations of Plaintiff in November 1999 and November 2001, and Dr. Labortue's assessment of Plaintiff in November 1999. He did not and the Appeals Council did not address Dr. Conteh's later findings in this regard.

7

The Commissioner does not dispute Dr. Conteh's records pre-date the ALJ's August 25, 2003, decision and address Plaintiff's mental capacity during her insured period. The records are "new" in that, as the Commissioner concedes, the ALJ never considered them. There is good cause to permit further consideration on remand because the Commissioner does not contest Plaintiff's assertion that she did submit these records to the ALJ prior to the ALJ's decision and that the ALJ failed to consider them.

The only issue then is whether the records are non-cumulative and probative such that they could alter the outcome of the case. The Court concludes that they are from Plaintiff's treating physician, although not a psychiatrist, and present the first evidence in the record that Plaintiff has difficulties stemming from her anxiety and depression, namely difficulty with motivation, malaise and fatigue as late as 2003. They relate to a different point in time along the compendium of Plaintiff's claimed disability period, which Plaintiff alleges extends from August 13, 1999. (T. at 17). Further, the records are relevant and probative such that there is a reasonable probability that they would change the administrative results.

As stated previously, the ALJ's finding at step two of the analysis that Plaintiff's mental impairments were not severe is a low threshold to overcome. On this record there are new records of a treating physician that increase Plaintiff's medication to address increased depression and anxiety in 2003 and there are findings regarding the affect of the mental conditions on her functional capacity. Malaise is defined as a vague feeling of depression or illness. Webster's II New Riverside University Dictionary (1988). Fatigue is defined as physical or mental weariness due to exertion. Id. The Court finds that there is a reasonable probability that with the new records, the ALJ would have therefore considered Plaintiff's depression severe at step two of the analysis.

8

Upon a finding of severity, the ALJ would have had to proceed to consider the effects if Plaintiff's anxiety and depression at steps three, four or five of the sequential analysis. Even if the mental impairments would not have rendered Plaintiff disabled, there is certainly a reasonable probability that they would have affected her ability to perform her past relevant work. If so, the ALJ would have had to call a vocational expert to opine as to work available for a person with Plaintiff's limitations. Because the ALJ terminated the analysis regarding Plaintiff's mental impairment prematurely at step 2 of the sequential analysis, it is not possible to conclude that the failure to consider the new evidence was not material to the ALJ's decision in this case.

Finally, although not addressed by the parties, the ALJ here clearly failed to meet his duty to consider all of the medical records in evidence by not considering the new medical records of Dr. Conteh. See 20 C.F.R. §§ 404.1545, 404.1527(b), 416.927(b). Accordingly, Plaintiff's Motion to Remand (Dkt. 21) is **GRANTED**. On remand, the parties may submit any additional evidence going to Plaintiff's mental limitations. This matter is remanded for the ALJ to consider the new records of Dr. Conteh. The CLERK is DIRECTED to enter judgment in favor of Plaintiff and CLOSE the case.

**DONE** and **ORDERED** this 28th day of September 2005.

MARY S. SCRIVEN
United States Magistrate Judge

Copies to:

Counsel of Record